UNITED STATES BANKRUPTCY COURT       <ins>FOR PUBLICATION</ins>
WESTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
In re

    ALESSANDRO INGRAO
    ROSANNE INGRAO           Case No. 09-13200 K

                Debtors
-----------------------------------------------------------------

Michael F. Barrett, Esq.
Cole, Sorrentino, Hurley, Hewner & Gambino, P.C.
37 Franklin Street, Suite 900
Buffalo, NY   14202

ATTORNEY FOR DEBTORS


Morris L. Horwitz, Esq.
Post Office Box 716
Getzville,  NY   14068

CHAPTER 7 TRUSTEE


<u>**OPINION AND ORDER**</u>


Here a Chapter 7 Trustee asks the Court to require a Rule 9006 "process" for all

amendments seeking new exemptions in a reopened case.  This case might implicate *Law*

*v. Siegel,* 134 S.Ct. 1188 (2014) and its progeny, but it is too soon to tell.[1]  Moreover, this

---

[1]This writer is not yet asked to deny an amended claim of exemption.  Procedurally, this is the Chapter 7 Trustee's Motion to Strike Amended Schedules and require Debtors to file a Motion setting forth their basis for filing amended schedules.  Debtors have filed a Cross-Motion to allow the filing of amended schedules and asks the Court to accept *nunc pro tunc* the amended schedules previously filed.  To the extent, if any, that the Debtors are suggesting that the *Law* case prevents any inquiry at all into the new exemption claim in a case that was closed years ago and reopened at their request, that suggestion is rejected, as explained below.  All that the Trustee seeks right now is an inquiry, and a process for that inquiry.

writer thinks it critical to avoid ruling beyond the facts at Bar.[2]

The Debtors filed for Chapter 7 relief in July of 2009. They did not schedule any ownership interest in real estate. They claimed to live in Rosanne Ingrao's father's home, and say that they still do. The original Trustee (who has since retired from the Panel), issued a no-asset report; a discharge was granted and the case was closed in November of 2009.

Through an attorney, Ms. Ingrao now asserts years later, that when she and her husband filed for relief in summer of 2009 she was unaware that in December of 2008, her father had deeded the home to her and her four siblings, retaining a life estate.[3] Her father has since passed away and she wishes to buy-out her siblings. Presumably, some borrowing is involved and thus a need to clear title, or else the Court might never have known about this unscheduled asset. So the Debtors have sought reopening to amend to schedule what was a future interest back in 2009 and to claim it exempt under the state law that applied at the time. The siblings have agreed to accept $25,000 each, $100,000 total. The Court does not yet know what the value of Debtor's share of the remainder interest was at the time of the filing of the petition, but N.Y.C.P.L.R. §5206 permitted a $50,000

---

[2]By the time this writer must address egregious misconduct like that presented in *Law* (a bogus encumbrance on a homestead) and in cases like *In re Dollman,* 2017 WL 4404242 (Bankr. D. N.M. 2017) and *In re Benjamin,* 2018 WL 492479 (Bankr. D. N.J. 2018)( in which debtors did not disclose personal injury causes of action), Congress might have amended §522, or the Supreme Court might have clarified *Law's* application (or non-application) to cases that were closed, and later reopened. Even a reference to *Law* is unnecessary if this Debtor is telling the truth, such that she could make a successful "excusable neglect" showing.

[3]Such a fact pattern is remarkably common in this formerly - "Blue Collar Town." It seems to have been in the culture of the legal community here since long before this writer moved here in 1981. Working-class couples provided for their kids but often didn't know the consequences, or even tell the kids what they had done.

homestead exemption in this county at that time, and it is now asserted that it was her homestead. (It was her claimed residence in 2009, but that does not mean, *vel non,* that it was her "homestead".)

The U.S. Trustee has appointed a different Panel Trustee to serve as  trustee in this reopened case, the original Trustee having retired therefrom.  The record of the §341 meeting no longer exists, according to the U.S.T.

The Chapter 7 Trustee may welcome the amendment to Schedule A, but he opposes the newly asserted claim of exemption on Schedule C.  He presents a number of decisions from courts that have ruled that once a case has been closed, the amendments to "[a] list, schedule, or statement" permitted by FRBP Rule 1009(a), must be sought pursuant to Rule 9006(b)(1)(2), which requires a motion demonstrating "excusable neglect" as to the earlier omission or error.  He has accurately cited these decisions as having purported to reconcile that process with *Law v. Siegel, Id.* [ *In re Awan,* 2017 WL 4179816 (Bankr. C.D. Ill. 2017), *In re Dollman*, *supra*, *In re Benjamin*, *supra*, and *In re Mendoza,* 2018 WL 889346 (Bankr. D. N.M. 2018).][4]

There might be merit to those decisions.  But because it is the Chapter 7 Trustee who is objecting to the amendments to Schedules A and C, he has the means to have the U.S. Trustee call for a special meeting of creditors pursuant to Rule 2003(f)  and to ask (if necessary) for Rule 2004 orders to determine whether to request an "excusable neglect"

---

[4]Because these decisions do not seek to <u>distinguish</u> *Law v. Siegel, supra*, on the obvious bases that (1) *Law* had never been a "closed" case for purposes of Rule 1009(a), and (2) there had not been a timely objection to *Law's* exemption claim, it seems safe to conclude that these decisions purport to honor the dicta in *Law v. Siegel*, as well as the holding.

hearing under Rule 9006 or not.  There are decisions belying the perceived authority of the Court or the U.S.T. to order another §341 meeting [see *In re Argon Credit, LLC*, 574 B.R. 684 (Bankr. N.D. Ill. 2017) and *In re Moore*, 2009 WL 2855810 (Bankr. D.C. 2009)], but certainly the Court may "invite" the Debtors to agree to a Rule 2003(f) special meeting. Answering a few questions under oath might make the Trustee's objection(and any *Law v. Siegel* implication) go away.

Despite *Law*, there can be some bases for opposition to a new or changed claim of exemption in a reopened case, bases that do not violate the holding or the dicta.  For example, maybe the new exemption claim is mutually exclusive with the original exemption claim which a debtor has already enjoyed.[5]  Perhaps the new claim seeks more than the dollar amount exemptible when the case was filed originally.  Perhaps a homestead is claimed, but the debtor transferred the property before the petition was filed. [See, e.g., *In re Sharp*, 2018 WL 1089598 (E.D. Mich. 2018)].  Indeed it has recently been suggested to me by my colleague, Chief Bankruptcy Judge Bucki, that there can be "enjoyment" of the fact that an asset that could have been exempt only in <u>part</u>, was not scheduled at all. Judge Bucki has posited to this writer, as a hypothetical, an unscheduled asset that had value above exemptions when the case was filed, but is of less value when the case is reopened.  He asks, "Why should the loss of value be suffered by the prepetition creditors

---

[5]Until January 2011when New York made the Federal Exemptions available, a debtor could not enjoy any cash exemption at all if even a dollar of homestead exemption was allowed. [*In re Garrett,* 225 BR 301 (Bankr. W.D.N.Y. 1998) and DCL §285 eff. 1/21/11.]

rather than the debtor who never gave the trustee the notice and opportunity to sell the asset when not all of its value was exempt?"

There may be other bases upon which a trustee or other party-in-interest may oppose a new or amended exemption claim. That is to say that there are other or broader considerations that might never implicate *Law's* teaching.

The point for now is that the Trustee here is correct that there needs to be a process that does not put the burden on the Trustee to figure out what went wrong years ago in the Debtors' oaths, work that could turn out to be without compensation. Perhaps that burden should fall on the U.S. Trustee [*In re* Goswami, 304 B.R. 386 (B.A.P. 9th Cir. 2003)] which is to say we taxpayers. Perhaps not. But no notion that *Law* precludes inquiry into why the asset was not scheduled in the beginning warrants ignoring Rule 9006, given that the Legislative History to 11 U.S.C. § 350 explicitly provides that "[t]he Rules will prescribe the procedure by which a case is reopened and how it will be conducted after reopening," and the Supreme Court and Congress approved Rule 9006. "Inquiry" is not forbidden even by the dicta in *Law*. Maybe Ms. Ingrao's "homestead" was an apartment in Florida, and she lived in Buffalo only in summer. Denial on that basis could not violate *Law*. If inquiry were to disclose that she knew full well that she had an ownership interest, that could implicate *Law*, but that is an issue for another day. And if it were to be determined that *Law's* teaching might apply or not apply based solely upon whether reopening was already granted (so as to resurrect Rule 1009 (in some courts' view)) as if the case had never been closed, then certainly a trial court could rule that reopening was "improvidently granted".

As for the current case, and all cases before this writer in which there is a reopening to permit an amended "list, schedule, or statement" [Rule 1009(a)], a timely objector may request a Rule 9006(b)(1) hearing on the matter of "excusable neglect".  But if the sole objector is a Chapter 7 trustee, then he or she shall first file the objection (*Taylor v. Freeland & Kronz*, 112 S.Ct. 1644 (1992)), then follow DOJ process to ask for a special meeting of creditors under Rule 2003(f).  No debtor will be <u>required</u> to appear under oath absent Rule 2004 process.[6]  Rather, debtors situated like those here might agree that this option could be  less burdensome than preparing for a Rule 9006 "excusable neglect" hearing".

SO ORDERED.

Dated:        Buffalo, New York
              March 7, 2018

                                                  /s/ Michael J. Kaplan
                                                  U.S.B.J.

---

[6]See e.g., *In re Argon Credit, LLC*, *supra* and *In re Moore*, *supra*.